**FILED**

APR 1 1 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

ROLAND ADAMS,

              Defendant.

_____/

CR. NO. S-02-0257 EJG
CIV. NO. S-10-0841 EJG

ORDER DENYING MOTION TO
VACATE, SET ASIDE OR CORRECT
SENTENCE

     Defendant, a prisoner proceeding pro se, has filed a motion
to vacate, set aside or correct his sentence pursuant to 28
U.S.C. § 2255.  After reviewing the record, the documents filed
in connection with the motion, and applicable law, the court has
determined that the matter may be decided without a hearing
because the files and records of the case affirmatively show the
factual and legal invalidity of defendant's arguments.  Shah v.
United States, 878 F.2d 1156, 1158-59 (9th Cir. 1989).  For the
reasons set forth below, the motion is DENIED.

1

## Background[1]

Defendant was indicted almost 9 years ago, on June 20, 2002, on multiple counts of wire fraud and money laundering and two counts of criminal forfeiture ("fraud" indictment).  Later that year, an additional indictment was filed charging defendant with unlawful procurement of naturalization and one count of making a false statement ("immigration" indictment).  The cases were related but not consolidated.

On August 18, 2003 defendant pled guilty to two of the counts in the fraud indictment.  The plea was pursuant to a plea agreement in which, among other things, defendant waived a jury trial on the forfeiture counts and waived rights to appeal and collateral attack of the convictions and sentence. In exchange, the government agreed to dismiss the remaining counts in the indictment.  Ultimately, agreement was reached on all items listed in the forfeiture counts with the exception of defendant's residence.  Following a bench trial, the court issued an order forfeiting the real property, finding the majority of the down payment came from proceeds directly traceable to defendant's fraud.

Shortly thereafter, defendant moved to withdraw his guilty plea, contending he had received ineffective assistance of

---

[1] Due to its age and the litigiousness of defendant, this case has a lengthy procedural history which has been documented in previous orders of the court.  A condensed version is supplied here.

counsel, rendering his pleas involuntary and uninformed.    An
evidentiary hearing was held March 19, 2004.   The court denied
the motion April 9, 2004.   An order incorporating the court's
oral analysis, was filed April 28, 2004.   Defendant proceeded to
trial April 12, 2004 on the immigration indictment and was
convicted on both counts.   The fraud and immigration cases were
consolidated for sentencing and defendant was sentenced in both
cases on March 11, 2005 to an aggregate term of 97 months
imprisonment and three years supervised release.   In addition,
restitution of $1.2 million was imposed in the fraud case.
Defendant appealed the convictions and sentence in both cases.

In a memorandum opinion filed June 29, 2006, the Ninth
Circuit affirmed defendant's conviction and sentence in full,
with one exception.   The appellate court remanded the forfeiture
order, finding that the district court erroneously considered as
tainted proceeds funds which were acquired outside the time
period of the indictment.   Following a hearing, the district
court again found the real property forfeitable, as proceeds
directly traceable to defendant's fraud, and entered an amended
judgment.

Defendant's appeal after remand was denied September 30,
2009.   His petition for certiorari was denied February 22, 2010.
The instant motion was filed April 8, 2010, purporting to raise
15 claims.

///

3

1

## Discussion

2

### A. Waiver of collateral attack

3      Pursuant to the plea agreement defendant waived his rights
4  to collaterally attack his convictions and sentence.  See Plea
5  Agreement, attached as Exhibit A, 7:21-25.    The plea agreement
6  is clear in its expression of the waiver and defendant cannot
7  legitimately contend he did not know its meaning where the
8  agreement bears his signature, and he was specifically questioned
9  by the court about his understanding of the waiver during the
10 plea colloquy.  See Transcript of Rule 11 proceedings, attached
11 as Exhibit B.

12      Defendant's waiver of his appellate rights is enforceable if
13 the waiver encompasses the grounds raised in the challenge, and
14 is knowingly and voluntarily made.  United States v. Joyce, 357
15 F.3d 921, 922-23 (9th Cir. 2004) (upholding waiver of appellate
16 rights); United States v. DeJarnette, 63 Fed. Appx. 284 (9th Cir.
17 2003) (upholding waiver of appeal and collateral attack).

18      The waiver signed by defendant is a broad one, giving up
19 "any right he may have to bring a post-conviction attack on his
20 conviction or his sentence.  He specifically agrees not to file a
21 motion under § 2255 or § 2241 of Title 28 of the United States
22 Code attacking his conviction or sentence."  Plea Agreement,
23 Exhibit A, 7:21-25 (emphasis added).[2]  This broad waiver

24

[2]  It appears the government mistakenly included language from a plea agreement in
25 another case in its opposition brief.  Compare Govt's opposition 2:4-10 *with* Memorandum of

26                                    4

encompasses all of the issues raised in defendant's motion, with the possible exception of claims 7 and 8, which raise the issue of ineffective assistance of counsel related to the plea process. "We doubt that a plea agreement could waive a claim of ineffective assistance of counsel based on counsel's . . . inducement of the defendant to plead guilty or accept a particular plea bargain." <u>United States v. Pruitt</u>, 32 F.3d 431, 433 (9th Cir. 1994).  In other words, a claim that challenges whether the waiver was knowing, intelligent and voluntary due to alleged ineffectiveness of counsel is not foreclosed since the validity of the waiver itself is called into question.  <u>See</u> <u>Washington v. Lampert</u>, 422 F.3d 864, 871 (9th Cir. 2005).  <u>See</u> <u>also</u> <u>United States v. McWhorter</u>, 2010 WL 2822819 * 4 (E.D. Cal. 2010).

### B.  Claims 7 and 8

In his seventh claim, defendant argues that Matthew Bockman, one of numerous attorneys who represented defendant during the multi-year span of these cases, both misadvised and failed to advise him about the immigration consequences of his plea. Specifically, defendant states that he was assured by counsel that the factual basis of the fraud case would not be used against him in the immigration case, that the immigration case would be dropped, and that defendant would not be subject to

---

Plea Agreement, docket number 41, 7:13-20 (attached as Exhibit A to this order).

1  deportation if he pled guilty in the fraud case.  See Defendant's
2  declaration, attached to § 2255 motion.  In the eighth claim
3  defendant contends Mr. Bockman failed to investigate the facts of
4  the case, the effect of which caused defendant to plead guilty.

5      These claims are not new.  Each of their component parts was
6  raised in defendant's motion to withdraw plea and his declaration
7  in support of the motion, filed in October of 2003.  See Docket
8  entries 55 - 58.  Defendant was given the opportunity to litigate
9  all of these issues during an evidentiary hearing on the motion
10 which was held in March of 2004.  See Transcript of hearing,
11 docket entry 212.  However, defendant withdrew his declaration
12 and decided not to testify.  This left only one issue before the
13 court: whether Mr. Bockman's failure to advise defendant that the
14 factual basis for his pleas in the fraud cause could be used as
15 evidence in the immigration case, was a basis for withdrawal of
16 his pleas of guilty. See Transcript of hearing on motion to
17 withdraw plea, attached as Exhibit C, 2:14-25.

18     Defendant, through counsel, argued that Mr. Bockman's
19 actions and omissions constituted ineffective assistance of
20 counsel, rendering the guilty pleas neither knowing or voluntary
21 because they were entered without an awareness of their full
22 consequences.  During the hearing Mr. Bockman was extensively
23 questioned by the court, by then-counsel Richard Dangler, and by
24 Assistant U.S. Attorney Camil Skipper.  The court specifically
25 found that failure to inform the defendant that the factual basis
26                              6

1 could be used as evidence in the immigration case was a

2 collateral consequence of the guilty pleas.  The court also found

3 that Mr. Bockman's "inaction" did not constitute ineffective

4 assistance of counsel because it did not fall below an objective

5 standard of reasonableness, nor did defendant offer any evidence

6 of prejudice, thereby failing to meet either prong of <u>Strickland</u>

7 <u>v. Washington</u>, 466 U.S. 668 (1984).

8      Now, seven years later, defendant is attempting to revive

9 the issue in two ways.  First, he relies on the recent Supreme

10 Court <u>Padilla v. Kentucky</u> decision in which the court held that

11 effective assistance of counsel requires that counsel inform his

12 client of the immigration consequences of his plea.  <u>Padilla v.</u>

13 <u>Kentucky</u>, 130 S.Ct. 1473, 1486 (2010).  Second, defendant

14 attempts to challenge both the evidence offered at the March 2004

15 hearing and the court's findings by submitting his declaration,

16 thereby injecting "evidence" he previously chose to abandon.  <u>See</u>

17 Declaration of Roland Adams, attached as Exhibit C to § 2255

18 motion.

19      Neither the <u>Padilla</u> decision nor defendant's recent

20 declaration revive this claim, decided on the merits seven years

21 ago.[3]  In <u>Padilla</u> the Supreme Court held that when the deportation

22

23      [3] The <u>Padilla</u> case was decided March 31, 2010, five weeks after defendant's conviction
became final on direct appeal. <u>See</u>  <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321 n.6 (1987) (case
becomes final when petition for certiorari has been denied.)  Whether it can be retroactively

24 applied to cases on collateral review, like defendant's, is an open question about which the courts
that have looked at the issue have not reached consensus.  Some consider it a new rule

25 announcing a new legal principle and thus not applicable to cases on collateral review, while

26                                    7

consequences of a plea are clear, an attorney's failure to so advise his client constitutes deficient performance under the performance prong of <u>Strickland</u>.  <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1483 (2010).  On the other hand, there are numerous situations in which the immigration consequences are unclear or uncertain.  "When the law is not succinct and straightforward..., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."  <u>Id</u>.

Here, the consequences were neither clear or certain. First, defendant was not a "noncitizen".  In fact, he was a citizen, albeit a naturalized one.  Second, no evidence has been presented to suggest that defendant's plea in the fraud case would compromise his citizenship.  At best is the testimony of Mr. Bockman during the hearing that he believed his failure to advise defendant that the factual basis in the fraud plea could be used against him in the immigration case constituted a fair and just reason to withdraw the plea.  However, the court disagreed, finding counsel's representation objectively reasonable.  Defendant's motion for post-conviction relief, while filed six years after the court's initial ruling, add nothing

others maintain that it is merely an application of an established rule of law. <u>Compare</u> <u>Miller v. State</u>, 196 Md.App. 658, 11 A.3d 340 (Ct. App. Md., filed Dec. 29, 2010) (no retroactive application) <u>with</u> <u>United States v. Hubenig</u>, 2010 WL 2650625 (E.D. Cal, filed July 1, 2010) (retroactive application).  Because the court finds <u>Padilla</u> substantively inapplicable to the facts of the case, it need not reach the procedural question of retroactivity.

1 new.   Accordingly, defendant has not satisfied the performance
2 prong of Strickland.

3       Alternatively, were the court to find that counsel's
4 inaction fell below an objective standard of reasonableness,
5 defendant has not shown prejudice, the necessary second prong of
6 Strickland.   To demonstrate prejudice in the context of a guilty
7 plea, the burden is on defendant to establish "a reasonable
8 probability that, but for counsel's errors, he would not have
9 pleaded guilty and would have insisted on going to trial." Hill
10 v. Lockhart, 474 U.S. 52, 59 (1985).

11      Defendant purports to answer that question with the bare-
12 bones assertion in his 2010 declaration that, absent Mr.
13 Bockman's affirmative representation that the immigration case
14 would be dropped and that defendant would not be deported, he
15 would not have pled guilty.   Declaration of Roland Adams
16 (attached to § 2255 motion), ¶ 4. Unfortunately for defendant, he
17 cannot now contradict the testimony of Mr. Bockman when he had a
18 full and fair opportunity to both cross-examine as well as put
19 forth his own evidence yet chose not to do so seven years ago. In
20 any event, an unsupported assertion that he would have gone to
21 trial is insufficient to constitute prejudice.

22      Nor has defendant offered any evidence to support the
23 unsubstantiated supposition in his eighth claim that counsel
24 failed to investigate the facts of the case.   Accordingly, he has
25 failed to establish a reasonable probability that but for

26                                9

1  counsel's inaction, defendant would have proceeded to trial.

2                            Conclusion

3       Based on the foregoing, defendant's motion to vacate, set

4  aside or correct his sentence is DENIED.

5       IT IS SO ORDERED.

6  Dated:    4/11/11

7                            _____
                             EDWARD J. GARCIA, JUDGE
8                            UNITED STATES DISTRICT COURT

10

1  McGREGOR W. SCOTT
   United States Attorney
2  BENJAMIN B. WAGNER
   CAMIL A. SKIPPER
3  Assistant U.S. Attorneys
   501 "I" Street, Suite 10-100
4  Sacramento, California 95814
   Telephone: (916) 554-2709
5



FILED

AUG 18 ~~

JACK L. WAGNER, CLERK U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10
   UNITED STATES OF AMERICA,       )   Case No. CR. S-02-257 EJG
11                                  )
              Plaintiff,            )
12                                  )   MEMORANDUM OF PLEA AGREEMENT
         v.                         )   AND AGREEMENT CONCERNING
13                                  )   TRIAL ON COUNTS NINE AND TEN
   ROLAND ADAMS,                    )
14      aka Peter Brown,            )
        aka Harold Whiteker,        )
15                                  )
              Defendant.            )
16 _____)

17                      I. INTRODUCTION

18      A.  Scope of Agreement:  Indictment 02-257 charges the

19 defendant with conspiracy to commit mail fraud and wire fraud,

20 conspiracy to launder money, one substantive count of money

21 laundering, and five substantive counts of wire fraud, in

22 violation of Title 18, United States Code, Sections 371, 1956(h),

23 1957, and 1343.  Indictment 02-257 also provides for criminal

24 forfeiture of all property derived form proceeds traceable to any

25 offense constituting "specified unlawful activity," pursuant to

26 Title 18, United States Code, Section 981(a)(1)(C).

27      This document contains the complete Plea Agreement between

28 the United States Attorney's Office for the Eastern District of

1 of  12



41
EXHIBIT A



1  California ("the government") and the defendant regarding
2  indictment 02-257.  This Plea Agreement is limited to the United
3  States Attorney's Office for the Eastern District of California
4  and cannot bind any other federal, state, or local prosecuting,
5  administrative, or regulatory authority.

6      **B.  Count Not a Party:**  The Court is not a party to this
7  Plea Agreement.  Sentencing is a matter solely within the
8  discretion of the Court, the Court is under no obligation to
9  accept any recommendations made by the government, and the Court
10  may, in its discretion, impose any sentence it deems appropriate
11  up to and including the statutory maximum stated in this Plea
12  Agreement.  If the Court should impose any sentence up to the
13  statutory maximum, the defendant cannot, for that reason alone,
14  withdraw his guilty plea, and he will remain bound to fulfill all
15  of his obligations under this Plea Agreement.  The defendant
16  understands that neither the prosecutor, defense counsel, nor the
17  Court can make a binding prediction or promise regarding the
18  sentence he will receive.

19                    **II. DEFENDANT'S OBLIGATIONS**

20      **A.  Guilty Pleas:**  The defendant will plead guilty to count
21  one charging conspiracy to commit mail and wire fraud, in
22  violation of Title 18, United States Code, Section 371, and count
23  seven charging conspiracy to launder money, in violation of Title
24  18, United States Code, Section 1956(h).  The defendant agrees
25  that he is in fact guilty of these charges and that the facts set
26  forth in the Factual Basis attached hereto as Exhibit A are
27  accurate.
28  ///

1    **B.   Forfeiture**:  The defendant agrees to waive his right to
2  a jury trial on counts nine and ten (criminal forfeiture) of
3  indictment 02-257.

4    **C.   Internet Domain Names**:  The defendant agrees to allow
5  the government immediate access to and control of the Internet
6  domain names Afribankcorp.com, Bancofafrica.com, and
7  Bancofeasterncarribean.com [sic].

8    **D.   Fine**:  The defendant agrees to pay any criminal fine
9  ordered by the Court following a presentence report
10 investigation.

11   **E.   Restitution**:  The defendant agrees to pay restitution.
12 The defendant understands that the preliminary restitution figure
13 (as calculated by the government) is $2,124,726.82, but that the
14 court cannot determine the final restitution figure until after
15 the presentence report investigation.

16   **F.   Special Assessment**:  The defendant agrees to pay a
17 special assessment of $200 at the time of sentencing by
18 delivering a check or money order, payable to the United States
19 District Court, to the United States Probation Office immediately
20 before the sentencing hearing.

21              **III. THE GOVERNMENT'S OBLIGATIONS**

22   **A.   Recommendation**:  The government will recommend that the
23 defendant be sentenced at the low end of the applicable guideline
24 range, as determined by the United States Probation Office, for
25 the offenses charged in counts one and seven of indictment 02-
26 257.

27   **B.   Acceptance of Responsibility**:  The government will not
28 oppose a two-level reduction in the defendant's offense level for

1 | acceptance of responsibility so long as the defendant
2 | demonstrates acceptance of responsibility and the probation
3 | officer finds that the defendant has accepted responsibility.

4 |    C.  **Dismissal of Charges**:  The government will move to
5 | dismiss counts two through six and count eight of indictment 02-
6 | 257 at the time of sentencing.

7 |              **IV. NATURE AND ELEMENTS OF CHARGE**

8 |      The defendant has read the charges against him and the
9 | charges have been explained to him by his attorney.  The elements
10 | of the offense charged in count one, conspiracy to commit mail
11 | fraud and wire fraud, in violation of Title 18, United States
12 | Code, Section 371, are:

13 |      First, beginning no later than February 26, 2001, and ending
14 | on or about June 17, 2002, there was an agreement between two or
15 | more persons to commit wire fraud and mail fraud;

16 |      Second, the defendant became a member of the conspiracy
17 | knowing of at least one of its objects and intending to help
18 | accomplish it; and

19 |      Third, one of the members of the conspiracy performed at
20 | least one overt act for the purpose of carrying out the
21 | conspiracy.

22 | The elements mail fraud and wire fraud are:

23 |      First, the defendant made up a scheme or plan for obtaining
24 | money by making false statements, with all jurors agreeing on at
25 | least one particular false statement that was made;

26 |      Second, the defendant knew that the statements were false;

27 |      Third, the statements were material, that is they would
28 | reasonably influence a person to part with money;

1    Fourth, the defendant acted with the intent to defraud; and

2    Fifth, the defendant used, or caused to be used, the mails

3 and the wires to carry out or attempt to carry out an essential

4 part of the scheme.

5    The elements of the offense charged in count seven,

6 conspiracy to launder money, in violation of Title 18, United

7 States Code, Sections 1956(h) and 1956(a)(2)(B)(i), are:

8    First, beginning no later than February 26, 2001, and ending

9 on or about June 17, 2002, there was an agreement between two or

10 more persons to transport or transmit monetary instruments or

11 funds to a place in the United States from or through a place

12 outside the United States; and

13    Second, that the defendant knew that the monetary

14 instruments and funds involved in the transportation,

15 transmission and transfer represented the proceeds of some form

16 of unlawful activity, and he also knew that such transportation

17 or transmission was designed in whole or in part to conceal an

18 disguise the nature, location, and source, ownership and control

19 of the proceeds of specified unlawful activity (to wit, wire

20 fraud and mail fraud in violation of Title 18, United States

21 Code, Sections 1341 and 1343).

22                    **V. MAXIMUM SENTENCE**

23    The maximum sentence that the Court can impose on count one

24 is five years imprisonment, a three-year term of supervised

25 release, a fine of $250,000, and a $100 mandatory special

26 assessment.  The maximum term of imprisonment that the Court can

27 impose on count seven is 20 years imprisonment, a three-year term

28 of supervised release, a fine of $500,000 (or, in the

1 | alternative, not more than twice the amount of the originally
2 | derived property involved in the transportation), and a $100
3 | mandatory special assessment. The total term of imprisonment the
4 | Court can impose is 25 years imprisonment, with a total fine of
5 | $750,000 (or $250,000 plus the alternative fine prescribed for
6 | count seven), a $200 mandatory special assessment, and a three-
7 | year term of supervised release. Should the defendant violate
8 | any of the terms of supervised release, he could be returned to
9 | prison for an additional two years.

10 | **VI. SENTENCING DETERMINATION**

11 | The defendant understands that a sentencing guideline range
12 | for this case will be determined by the Court pursuant to the
13 | Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28
14 | U.S.C. § 991-998. The defendant further understands that the
15 | Court will impose a sentence within that guideline range, unless
16 | the Court finds that there is a basis for departure (either above
17 | or below the range) because there exists an aggravating or
18 | mitigating circumstance of a kind or to a degree not adequately
19 | taken into consideration by the Sentencing Commission in
20 | formulating the Guidelines.

21 | **VII. REMAINING CHARGES**

22 | Counts nine and ten of indictment 02-257, which charge
23 | criminal forfeiture, will be tried to the Court, without a jury,
24 | on a date convenient to the Court following the entry of
25 | defendant's guilty pleas to counts one and seven and prior to
26 | sentencing in this matter. The defendant acknowledges that this
27 | plea is not a conditional plea, and that he will have no right to
28 | withdraw his plea regardless of the outcome of further

1  proceedings concerning the forfeiture allegations in indictment
2  02-257.  The defendant further acknowledges that he will have no
3  right to withdraw his plea regardless of the outcome of
4  proceedings arising from indictment 02-560.

5                          **VIII.  WAIVERS**

6    **A.  Waiver of Constitutional Rights:**  The defendant
7  understands that by pleading guilty he is waiving the following
8  constitutional rights:  (a) to plead not guilty and persist in
9  that plea if already made; (b) to be tried by a jury; (c) to be
10 assisted at trial by an attorney, who would be appointed if
11 necessary; (d) to confront and cross-examine witnesses against
12 him; and (e) not to be compelled to incriminate himself.

13   **B.  Waiver of Appeal and Collateral Attack:**  The defendant
14 understands that the law gives him a right to appeal his
15 conviction and sentence.  He agrees as part of his plea, however,
16 to give up this right.  He specifically gives up his right to
17 appeal any fine and order of restitution the Court may impose and
18 agrees that an order of restitution that exceeds the amount
19 stated in this plea agreement will not provide grounds for
20 appeal.

21    The defendant also gives up any right he may have to bring a
22 post-conviction attack on his conviction or his sentence.  He
23 specifically agrees not to file a motion under § 2255 or § 2241
24 of Title 28 of the United States Code attacking his conviction or
25 sentence.

26    If the defendant's conviction on the counts to which he is
27 pleading guilty is ever vacated at the defendant's request, or
28 his sentence is ever reduced at his request, the government shall

                          7 of  12

1  have the right (1) to prosecute the defendant on the counts to
2  which he pleaded guilty; and (2) to file any new charges that
3  would otherwise be barred by this Agreement.  The decision to
4  pursue any or all of these options is solely in the discretion of
5  the United States Attorney's Office.  By signing this Agreement,
6  the defendant agrees to waive any objections, motions, and
7  defenses he might have to the government's decision.  In
8  particular, he agrees not to raise any objections based on the
9  passage of time with respect to such counts including, but not
10  limited to, any statutes of limitations or any objections based
11  on the Speedy Trial Act or the Speedy Trial Clause of the Sixth
12  Amendment.

13                  **IX. ENTIRE PLEA AGREEMENT**

14      Other than this Plea Agreement, no agreement, understanding,
15  promise, or condition between the government and the defendant
16  exists, nor will such agreement, understanding, promise, or
17  condition exist unless it is committed to writing and signed by
18  the defendant, counsel for the defendant, and counsel for the
19  United States.

20                  **X. APPROVALS AND SIGNATURES**

21      **A.  Defense Counsel:**  I have read this Plea Agreement and
22  discussed it fully with my client.  The Plea Agreement accurately
23  and completely sets forth the entirety of the agreement.  I
24  concur in my client's decision to plead guilty as set forth in
25  this Agreement.
26  DATED:  8/18/3

27                                      MATTHEW C. BOCKMAN
                                        Attorney for defendant
28                                      Roland Adams

                          8 of  12

1    **B.  Defendant**:  I have read this Plea Agreement and
2    carefully reviewed every part of it with my attorney.  I
3    understand it, and I voluntarily agree to it.  Further, I have
4    consulted with my attorney and fully understand my rights with
5    respect to the provisions of the Sentencing Guidelines which may
6    apply to my case.  No other promises or inducements have been
7    made to me other than those contained in this Agreement.  In
8    addition, no one has threatened or forced me in any way to enter
9    into this Plea Agreement.  Finally, I am satisfied with the
10   representation of my attorney in this case.

11

12   DATED:  08-18-03

     ROLAND ADAMS
13   Defendant

14       **C.  Attorneys for the United States**:  I accept and agree to
15   this Plea Agreement on behalf of the government.

16   Date: 11 August 2003            Respectfully submitted,

17                                   McGREGOR W. SCOTT
                                     United States Attorney
18

19
                                 By:
20                                   CAMIL A. SKIPPER
                                     Assistant U.S. Attorney
21

22

23

24

25

26

27

28

                              9 of  12

1
## EXHIBIT A

2
### FACTUAL BASIS

3      At all times relevant to the conduct alleged in the
indictment, defendant ROLAND ADAMS lived and worked in
4   Sacramento, State and Eastern District of California.  Beginning
no later than approximately February 2001, ADAMS conspired with
5   others in Nigeria, South Africa, and Canada, among other places,
to operate an advance fee fraud scheme for the purpose of
6   defrauding victims from around the world, including the United
States.

7

      The advance fee fraud scheme was perpetrated, in part,
8   through the mailing of solicitation letters from the Eastern
District of California, purportedly from officials of African
9   governments or government agencies.  The solicitation letters
sought the victims' assistance in diverting millions of dollars
10  held in a fictitious investment account or trust to the private
use of the African officials and their associates.  In exchange
11  for the victims' agreement to receive the diverted funds and
forward the majority to the official, the victims were promised a
12  substantial portion of the diverted funds.  During the operation
of the scheme, victims were required to provide personal
13  information to the defendant and his co-conspirators, including
banking information.  The scheme purportedly involved the
14  transfer of the diverted funds through certain offshore financial
institutions directly to the victims' bank accounts.

15

      On or about May 7, 2001, ADAMS caused such a solicitation
16  letter, purportedly from a senior employee of the South African
Ministry of Energy and Mineral Resources in Johannesburg, South
17  Africa, to be mailed from Sacramento to victims in the State of
Washington.

18

      The defendant registered the Internet domain names
19  Afribankcorp.com, Bancofafrica.com, and Bancofeasterncarribean.
com [sic].  On or about April 5, 2001, ADAMS, using the alias
20  Peter Brown, visited a web site design company in Sacramento to
obtain a designer's professional services to create web sites for
21  the fictitious offshore banks.

22      These banks did not exist apart from the web sites, however,
each bank web site included a "Foreign Payment Verification"
23  link.  When activated, victims were prompted to enter a unique
"Authorization Code" by which they could access information about
24  the account holding the promised funds.  The "Foreign Payment
Verification" page detailed the amount of money purportedly
25  designated for transfer to that victim upon the payment of
certain fees.  These web sites were maintained by ADAMS, and on
26  or about May 22, 2001, ADAMS accessed the Afribankcorp.com web
site in an administrator capacity, via an Internet account opened
27  in the name of Sam Kigali.

28  ///

1    The fees assessed, often called the "marginal fluctuation
difference," or "MFD," typically amounted to 1% of the total fund
2  transfer amount.  Some victims were required to send the MFD fee
to specified individuals, sometimes "Boma Jones" in South Africa
3  or "Stephen Taylor" in Canada, before the purported offshore
banks could release the funds.  Other victims were instructed to
4  transfer the MFD fees to bank accounts in Cyprus, Canada, and
other foreign countries.  Victims often sent several payments of
5  lesser amounts attempting to pay the entire MFD, which could be
anywhere from several thousands to several hundred thousand
6  dollars.  In this way, the web sites were used to further the
money laundering conspiracy.
7
       Victims received these instructions for payment of the fees,
8  as well as updates on the progress of the release of the
fictitious funds, by e-mail.  Victims also contacted Afribank
9  using a Los Angeles-area telephone number, calls which were
automatically forwarded to ADAMS' mobile telephone.
10
       A portion of the funds and monetary instruments sent to
11 South Africa, Canada, or bank accounts around the world for
payment of the fees (the proceeds of the fraud scheme) were later
12 forwarded by the defendant's co-conspirators abroad to Sacramento
by Western Union wire transfer or other means for ADAMS' personal
13 use.  The transfer transactions involved multiple wire transfers
and private shipments conducted in a manner so as to conceal the
14 nature of the funds as fraud proceeds, and to conceal the origin
of the funds.  With regard to funds sent to South Africa, a
15 review of Western Union money transfer records details numerous
wire transfers from various individuals to "Boma Jones" totaling
16 approximately $145,000.  The records also document 60 wire
transfers to ADAMS between October 2000 and August 2001 totaling
17 almost $90,000, most originating from South Africa (but one
originating from Inglewood, California, and 10 from Canada).
18 Western Union records document thousands of dollars in wire
transfers from South Africa to the defendant in various names
19 from similar addresses.

20    The defendant knew the funds and instruments were proceeds
from the fraud scheme and accepted them as payment for his
21 participation in the scheme.  The defendant also knew the funds
were routed in a manner meant to conceal the nature and origin of
22 the funds.  The defendant, personally and through his business,
Adams Business Services, received the funds and monetary
23 instruments from his co-conspirators abroad and deposited a large
portion of them in a U.S. Bank account numbered 153490192959, in
24 the name of Roland Adams and Adams Business Services, in
Sacramento.
25
       The web sites for the fictitious banks were maintained by
26 the defendant using his Sony Vaio laptop computer, model #PCG-
9B3L, with hard drive, DVD-Rom, CD-RW, 3.5 inch floppy drive and
27 all its components, serial #283471303217395.

28 ///

1       At trial, the government would present the following
2  evidence:  (1) Western Union wire transfer records; (2) documents
   and digital files seized from the defendant and found on computer
   storage media during execution of the search warrant; (3) other
3  documents belonging to the defendant recovered from other
   sources, including financial institutions and public trash
4  receptacles; (4) records from the web sites for the fictitious
   banks; (5) documents in the possession of scheme victims; and (6)
5  the testimony of law enforcement officers and victims.  If all
   victims were called to testify at trial, the government could
6  present evidence of actual losses in excess of $2.1 million.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**FILED**

--oOo--

**DEC 1 1 2003**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROLAND ADAMS,

        Defendant.

_____/

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ____ at EG ____

CASE NO.:   CR S-02-257 EJG
             CR S-02-560

EJG COPY

--oOo--

REPORTER'S TRANSCRIPT ON

TAKING OF PLEA

Monday, August 18, 2003

Held in United States District Court, Eastern District of
California, before the Honorable Edward J. Garcia, on
Monday, August 18, 2003, 8:37 a.m.

PLAINTIFF:   McGREGOR W. SCOTT
            United States Attorney
            501 I Street, Suite 10-100
            Sacramento, California  95814
            BY:  CAMIL A. SKIPPER, ASSISTANT U.S. ATTORNEY

DEFENDANT:   QUIN DENVIR
            FEDERAL DEFENDER
            801 I Street, Third Floor
            Sacramento, California  95814
            BY:  MATT BOCHMAN, ASSISTANT FEDERAL DEFENDER

Reported by:             Keli Rutherdale, CSR No. 10084

## DIAMOND COURT REPORTERS

120 I Street, 2nd Floor
Sacramento, CA 95814
(916) 498-9288

EXHIBIT B

1   MONDAY, AUGUST 18, 2003, SACRAMENTO, CALIFORNIA  8:37 A.M.

2                              --oOo--

3                   THE CLERK:  All rise.  Court is now in

4   session.  The Honorable Edward J. Garcia presiding.  You may

5   be seated  Calling criminal S-02-257 and 02-560, United

6   States versus Roland Adams.

7                   (Pause in proceeding.)

8                   MS. SKIPPER:  Good morning, your Honor, Camil

9   Skipper for the United States.

10                  THE COURT:  Ms. Skipper.

11                  MR. BOCHMAN:  Good morning.  Matthew Bochman

12  for Mr. Adams, present in custody.

13                  THE COURT:  Mr. Bochman.  This matter is on

14  calendar for status conference.  At the last appearance, at

15  the request of the Defense, we vacated the scheduled trial

16  date and put the matter over to today.

17                  How do you intend to proceed today, Mr.

18  Bochman?

19                  MR. BOCHMAN:  Your Honor, we have handed your

20  clerk an executed plea agreement.

21                  (Pause in proceeding.)

22                  THE COURT:  As I understand it, this plea

23  agreement -- in this written plea agreement the Defendant

24  offers to change his plea to guilty to Count 1, conspiracy

25  to commit mail and wire fraud, and to Count 7, conspiracy to

1  commit money laundering, and will waive jury trial on Counts
2  9 and 10, the criminal forfeiture counts.
3                  (Pause in proceeding.)
4                  THE COURT:  The Defendant also agrees to allow
5  the Government immediate access to and control of the
6  Internet domain names Afribankcorp.com, Bancofafrica.com,
7  and Bancofeasterncarribean.com, and finally the Defendant
8  agrees to waive appeal and collateral attack of the
9  conviction and sentence.
10                  In return, the Government agrees to recommend
11  that the Defendant be sentenced at the low end of the
12  guideline range and to not oppose a two-level reduction for
13  Defendant's acceptance of responsibility, if the probation
14  officer so recommends, and will move to dismiss Counts 2
15  through 6 and Count 8 of the indictment.
16                  Is that essentially the plea agreement, Ms.
17  Skipper?
18                  MS. SKIPPER:  Yes, your Honor.
19                  THE COURT:  Is that your understanding of the
20  plea agreement, Mr. Bochman?
21                  MR. BOCHMAN:  Yes, your Honor.
22                  THE COURT:  And is that what you want to do,
23  Mr. Adams, is change your plea to guilty to Count 1 and
24  Count 7 of the indictment and waive jury trial on Count 9
25  and Count 10 with those understandings?

1                    THE WITNESS:  Yes, sir.

2                    THE COURT:  Before accepting your guilty plea,

3    there are a number of questions I will ask you to ensure

4    that it is a valid plea, and I will have you sworn to tell

5    the truth for that purpose.

6                    If you do not understand any of the questions

7    or at any time wish to consult with your attorney, please

8    say so, since it is important to a valid plea that you

9    understand each question before you answer it.

10                   Ms. Clerk, please swear the Defendant.

11                   THE CLERK:  Mr. Adams, you do solemnly swear

12   you will true answer make to such questions that shall be

13   put to you touching upon your entry of plea, so help you

14   God?

15                   THE WITNESS:  I do.

16   BY THE COURT:

17        Q.    Do you understand having been sworn your

18   answers to my questions shall be subject to the penalty of

19   perjury or making a false statement if you do not answer

20   truthfully?

21        A.    Yes, I do.

22        Q.    I wish to advise you you will be sentenced

23   under the Federal Sentencing Guidelines.  I cannot now

24   predict what your actual sentence will be.

25                   If I accept your pleas of guilty this morning,

1  your case will be referred to the U.S. Probation Office for

2  a report and recommendation after which I will determine

3  your sentence.  Until I receive that report, I simply don't

4  know enough about you, your background, or the details and

5  circumstances of the offenses to which you are offering to

6  plead guilty to predict what your actual sentence might be.

7              Therefore, I advise you that if you plead

8  guilty, you may be sentenced to a term higher than your

9  attorney may be predicting or to the maximum term, and if

10 your attorney is making a mistake in guideline computations,

11 that will not form a basis for you to withdraw your guilty

12 plea.

13              Do you understand that?

14      A.     Yes, sir.

15      Q.     Also, these agreements by the Government in

16 return for your pleas of guilty but are recommendations

17 only.  They are not binding on the Court, and I may still

18 sentence you to a higher or to a maximum term.  And if I

19 decide to impose a more severe sentence than that being

20 recommended by the U.S. Attorney and your attorney, you will

21 not be entitled to withdraw your guilty plea.

22              Do you understand that?

23      A.     Yes, sir.

24      Q.     How old are you, Mr. Adams?

25      A.     I'm thirty-seven.

1    Q.  How far did you go in school?

2    A.  I have a bachelors degree in political science

3 and political administration.

4    Q.  That's more than twelve years of education?

5    A.  Yes, sir.

6    Q.  Do you understand what's happening here this

7 morning?

8    A.  Yes, sir.

9    Q.  Are you presently under the influence of

10 alcohol or any drug or narcotic?

11    A.  No, sir.

12    THE COURT:  Counsel, do either of you have any

13 doubt to the Defendant's competence to plead at this time?

14    Mr. Bochman?

15    MR. BOCHMAN:  No, your Honor.

16    THE COURT:  Ms. Skipper?

17    MS. SKIPPER:  No, your Honor.

18    THE COURT:  I find the Defendant is competent

19 to plead at this time.

20 BY THE COURT:

21    Q.  Have you had enough time now, Mr. Adams, to

22 discuss your case and your plea of guilty with your

23 attorney?

24    A.  Yes, sir.

25    Q.  Are you satisfied with your attorney's

1 representation?

2      A.    Yes, sir.

3      Q.    Let me read to you the charges that you are
4 offering to plead guilty to.

5           (Pause in proceeding.)

6 BY THE COURT:

7      Q.    You are charged in Count 1 of the indictment
8 with a violation of Section 371 of Title 18 U.S. Code,
9 conspiracy to commit mail fraud and wire fraud.

10          Specifically the grand jury charges that you,
11 at all times relevant to this indictment, were an individual
12 who resided in the Sacramento, California, area; that you
13 maintained a business office in the name of Adams Business
14 Services at 926 J Street, Sacramento, California, and that
15 at all times relevant to the indictment you were associated
16 with persons who lived and resided in Nigeria, in the
17 Johannesburg area of South Africa, and the Toronto area of
18 Canada; and that no later than approximately February 26th,
19 2001, with the assistance of others, you began operating an
20 advance fee scheme in which you defrauded victims from
21 around the world.

22          The scheme was perpetrated, in part, through
23 the mailing of solicitations letters from officials of
24 African government or government agencies.  According to
25 solicitation letters, the assistance of the recipients was

7

1   sought in diverting large sums of money for the private use
2   of the African officials or their associates.

3                In exchange for the recipient's agreement to
4   receive the diverted funds and forward the proceeds to an
5   official, the recipients were promised a substantial portion
6   of the diverted funds.  The scheme purportedly involved the
7   transfer of the diverted funds through certain offshore
8   financial institutions.

9                In order to enhance the scheme's appearance of
10  legitimacy, you created Internet web sites purportedly
11  associated with the offshore financial institutions and you
12  and others represented yourselves to be representatives of
13  those financial institutions to those who were willing to
14  transfer large sums of money, the victims, in exchange for
15  certain advance fee payments.

16               In fact, there were no such financial
17  institution and the funds obtained from victims were used
18  for the personal purposes of you and others.

19               Beginning at date no later than approximately
20  February 26th, 2001, and continuing through June 17, 2002,
21  in the State and Eastern District of California and
22  elsewhere, you knowingly combined, conspired, and agreed to
23  other persons both known and unknown to the grand jury to
24  devise and intend to devise a scheme and artifice to defraud
25  numerous victims around the world as described in paragraphs

1 three and four above and to obtain money from them by means

2 of false and fraudulent pretenses, representations, and

3 promises and to execute the scheme by, A, causing mail

4 communications to be delivered by the U.S. Postal Service

5 and by commercial interstate carriers in violation of Title

6 18, U.S. Code Section 1341; and B, causing communications to

7 be transmitted by means of wire in interstate and foreign

8 commerce in violation of Title 18, U.S. Code Section 1343.

9 The object of the conspiracy was for you and

10 others to obtain funds from the victims by marketing the

11 fraudulent advance fee scheme through the mails and over the

12 Internet and to conceal the identity and location of you and

13 the other perpetrators of the scheme and in order to

14 perpetuate and conceal the scheme.

15 In furtherance of the conspiracy, you and your

16 co-conspirators employed, among others, the following ways

17 and means, A, you used the mail to advance fee scheme

18 solicitation letters to numerous potential victims in the

19 United States and elsewhere to send the letters, invited

20 recipients to receive payment of millions of dollars in

21 exchange for recipient's assistance in a scheme to divert

22 funds under the supervision of certain African government

23 agencies to the personal use of corrupt African officials.

24 You obtained addresses for that purpose, in

25 part through purchasing mailing lists from commercial

1  telemarketing businesses.

2          Once a potential victim displayed an interest
3  in participating in the scheme, you and your
4  co-conspirators, using aliases, communicated to the victim
5  that large payments would be made through certain offshore
6  financial institutions, including Afribank Corp. and Bank of
7  Africa.

8          It was further represented that funds would be
9  transferred once certain fees, such as financial institution
10 fees, legal fees, and other fees were paid.

11          You and your co-conspirators directed victims
12 to send such fees to addresses in South Africa and Canada,
13 which locations were represented to be associated with the
14 financial institutions.

15          In order to enhance the appearance of
16 legitimacy of the scheme, you created Internet web sites,
17 including Afribankcorp.com and Bancofafrica.com, which
18 appeared to be web sites for legitimate foreign banking
19 institutions.

20          The web sites included a foreign payment bank
21 verification link.  The victims were prompted to enter an
22 authorization code by which they could access information as
23 to the amount of money that was purportedly designated for
24 transfer to that victim upon the payment of certain fees.
25          You and your co-conspirators took steps to

10

1 enhance the appearance of legitimacy of the institutions
2 depicted in the web site. You and others responded to email
3 inquiries to the web sites using other identities and posing
4 as bank employees.

5 The web site for Afribank Corp. identified an
6 L.A. office with a Los Angeles telephone number. That
7 telephone number, in fact, was rented from a voice mail
8 service and automatically forwarded all calls to Canada
9 where a co-conspirator, posing as a bank employee, responded
10 to inquiries.

11 You used a cell phone with a Los Angeles
12 telephone number that was represented to victims to be a
13 number associated with the L.A. office of Afribank Corp.

14 You and your co-conspirators used aliases to
15 communicate by mail, fax, telephone, and electronically by
16 email with victims around the globe. Aliases used by you
17 include Peter Brown and Harold Whiteker.

18 You and your co-conspirators used private
19 mailboxes opened in the name of fictitious aliases as
20 employees when and for receiving mail in connection with the
21 scheme.

22 You and your co-conspirators used funds
23 received from victims to further the scheme and to purchase
24 goods and services for their personal benefit, including
25 real property, luxury items, and travel to locations around

11

1  the world.

2              (Pause in proceeding.)

3              THE COURT:  Mr. Bochman, there are some

4  fifteen overt acts alleged.

5              Will you waive a full reading of the

6  indictment in that regard?

7              MR. BOCHMAN:  Yes, your Honor.

8              THE COURT:  I'll read the first two.  In

9  furtherance of the conspiracy and to achieve the objects

10 thereof, you committed, among others, the following overt

11 agents in the State and Eastern District of California and

12 elsewhere:  On or about February 26th, 2001, you caused a

13 private mailbox to be opened at 1731 Howe Avenue,

14 Sacramento, in the name of Carlita Ford;

15             Two or B:  On or about April 5, 2001, using

16 the name Peter Brown, you caused an application for Internet

17 web site to be completed at the offices of the Internet

18 services provider company in Sacramento, California.

19             (Pause in proceeding.)

20             THE COURT:  And there are eleven other overt

21 acts alleged.

22             (Pause in proceeding.)

23             THE COURT:  In Count 7 of the indictment --

24 excuse me, yeah -- Count 7, you are charged with a violation

25 of Section 1956, subdivision h, of Title 18 U.S. Code,

12

DIAMOND COURT REPORTERS (916) 498-9288

1  conspiracy to launder money.

2  The grand jury charges in that count, first of
3  all, repeats all of the allegations contained in paragraphs
4  one through four of the indictment, which I've just read,
5  and alleges that beginning no later than March 2001 and
6  continuing through June 17th, 2002, in the Eastern District
7  of California and elsewhere, you and others, known and
8  unknown to the grand jury, did unlawfully and knowingly
9  conspire, confederate, and agree together and with one
10  another to knowingly transport, transmit, and transfer and
11  attempt to transport, transmit, and transfer monetary
12  instruments to a place in the United States from or through
13  a place outside the United States with the intent to promote
14  the carrying on of specified unlawful activity, to wit, wire
15  fraud and mail fraud;

16  And two, knowing that the monetary instruments
17  and funds involved in the transportation, transmission, and
18  transfer represented the proceeds of some form of unlawful
19  activity and knowing that such transportation, transmission,
20  and transfer was designed in whole or in part to conceal and
21  disguise the nature, location, source, ownership, and
22  control of the proceeds of specified unlawful activity, to
23  wit, the wire fraud and mail fraud, all of which is in
24  violation of federal law.

25  The manner and means by which the conspiracy

1  was sought to be accomplished included, among other things,
2  the following: A, and you and your co-conspirators caused
3  proceeds of the advance fee scheme to be routed to you in
4  Sacramento through accounts in Canada and other countries;

5  B, you and your co-conspirators, in order to
6  further conceal the nature, source, and control of the
7  proceeds of the advance fee scheme caused proceeds to be
8  sent to you in various forms, including Canadian money
9  orders, Western Union money transfers, bank-to-bank wire
10 transfers, and checks drawn on foreign business bank
11 accounts;

12  C, you and your co-conspirators, in order to
13 further conceal the nature, source, and control of the
14 proceeds of the advance fee scheme, used multiple
15 transactions to structure the transfer of funds and used
16 multiple identities and entities to facilitate the transfer
17 of funds;

18  And D, you deposited funds received as
19 described above into your business accounts in Sacramento
20 and used the funds to promote the carrying on of the advance
21 fee scheme and for other personal purposes.

22  Ms. Skipper, would you please advise the
23 Defendant of the essential elements of each of the two
24 charges that you would have to prove at trial beyond a
25 reasonable doubt to convict the Defendant at jury trial?

1        MS. SKIPPER:  Yes, your Honor.

2        With regard to Count 1, the Government would

3   be required to prove:  First, beginning no later than

4   February 26th, 2001, and ending on or about June 17th, 2002,

5   there was an agreement between two or more persons to commit

6   wire fraud and mail fraud;

7        Second, the Defendant became a member of the

8   conspiracy knowing of at least one of its objects and

9   intending to help accomplish it;

10       And third, one of the members of the

11  conspiracy performed at least one overt act for the purpose

12  of carrying out of the conspiracy.

13       The elements of mail fraud and wire fraud are:

14  First, the Defendant made up a scheme or plan for obtaining

15  money by making false statements, with all jurors agreeing

16  on at least one particular false statement that was made;

17       Second, the Defendant knew that the statements

18  were false;

19       Third, the statements were material; that is,

20  they would reasonably influence a person to part with money;

21       Fourth, the Defendant acted with the intent to

22  defraud;

23       And fifth, the Defendant used or caused to be

24  used the mails or wires to carry out or attempt to carry out

25  an essential part of the scheme.

15

DIAMOND COURT REPORTERS  (916) 498-9288

1           The elements of the offense charged in Count 7
2   are:  First, beginning no later than February 26th, 2001,
3   and ending on or about June 17th, 2002, there was an
4   agreement between two or more persons to transport or
5   transmit monetary instruments or funds to a place in the
6   United States from or through a place outside the United
7   States;

8           And second, that the Defendant knew that the
9   monetary instruments and funds involved in the
10  transportation, transmission, and transfer represented the
11  proceeds of some form of unlawful activity, and he also knew
12  that such transportation or transmission was designed, in
13  whole or in part, to conceal and disguise the nature,
14  location, and source, ownership and control of the proceeds
15  of specified unlawful activity; to wit, wire fraud and mail
16  fraud.

17          THE COURT:  Mr. Adams, did you hear and
18  understand the statement of the prosecutor as to the
19  essential elements that must be proved to be convicted of
20  the two offenses you are pleading guilty to?

21                  THE WITNESS:  Yes, sir.

22          THE COURT:  Do you understand the nature of
23  the charges and what is necessary to constitute guilt of
24  those offenses?

25                  THE WITNESS:  Yes, sir.

16

1        (Pause in proceeding.)

2        THE COURT:  Those offenses are punishable as
3   follows:  The maximum penalty on Count 1, conspiracy to
4   commit mail and wire fraud, is five years imprisonment, a
5   three year term of supervised release, a fine of up to two
6   hundred fifty thousand dollars, and a one-hundred-dollar
7   mandatory special assessment.

8        The maximum term of imprisonment that the
9   Court can impose on Count 7 is twenty years imprisonment, a
10  three year term of supervised release, a fine of up to half
11  a million dollars, and a one-hundred-dollar special
12  assessment.

13       So on your plea of guilty to both counts, the
14  aggregate term of imprisonment you expose yourself to is up
15  to twenty-five years imprisonment, a total fine of up to
16  seven hundred fifty thousand dollars, a three year term of
17  supervised release, a two-hundred-dollar mandatory special
18  assessment, and a two-hundred-dollar mandatory special
19  assessment.

20       Do you understand the maximum penalties?

21       MS. SKIPPER:  Excuse me, your Honor.  I would
22  just note there is an alternative fine provision that
23  applies to Count 7.  It can either be five hundred dollars,
24  the Court mentioned, or in the alternate not more than twice
25  the amount of the originally derived property arrived at in

17

DIAMOND COURT REPORTERS  (916) 498-9288

1    the transaction.

2              THE COURT:  I understand.  That's correct.

3    BY THE COURT:

4         Q.   Do you understand that, Mr. Adams?

5         A.   Yes, sir.

6         Q.   Are you a citizen of the United States, Mr.

7    Adams?

8         A.   Yes, sir.

9         Q.   Are you presently on parole or probation?

10        A.   No, sir.

11        Q.   I'm now going to advise you of the

12   constitutional rights you will be giving up if you plead

13   guilty.

14             You have a right to plead not guilty and to

15   stand by your plea of not guilty to these charges.

16             Do you understand that right?

17        A.   Yes, sir.

18        Q.   You also have the right to a jury trial on the

19   charges and to be represented by counsel at that trial.

20             Do you understand that right?

21        A.   Yes, sir.

22        Q.   At your trial you have the right to see and

23   hear and question the witnesses against you.

24             Do you understand that right?

25        A.   Yes, sir.

1          Q.    You also have the right to remain silent and
2    not incriminate yourself.

3                Do you also understand that right?

4          A.    Yes, sir.

5          Q.    And do you understand that you cannot be
6    convicted of these charges unless all twelve jurors agreed
7    on your guilt beyond a reasonable doubt at a trial?
8    Understand that?

9          A.    Yes, sir.

10         Q.    If I accept your guilty pleas to these charges
11   this morning, there will be no trial; that is, by pleading
12   guilty, you are giving up your right to a jury trial, your
13   right to confront and cross-examine the witnesses against
14   you, and your right to remain silent and not incriminate
15   yourself.

16               Do you understand that?

17         A.    Yes, sir.

18         Q.    Other than what has been said here in open
19   court or that may appear in your written plea agreement, has
20   anyone made you any other promises in connection with
21   penalty or punishment to get you to plead guilty?

22         A.    No, sir.

23         Q.    Have you or anyone you know been threatened,
24   in any way, to get you to plead guilty?

25         A.    No, sir.

1         Q.    In this plea agreement you agree to waive

2   appeal and collateral attack of your conviction and

3   sentence.

4               Do you understand these rights?

5         A.    Yes, sir.

6         Q.    Do you have any questions about the waiver of

7   appeal and collateral attack?

8         A.    No, sir.

9         Q.    You've discussed this with your attorney?

10        A.    Yes, sir.

11        Q.    · Do you now knowingly and voluntarily then

12  waive your rights to appeal and collateral attack of the

13  conviction and sentence?

14        A.    Yes, sir.

15              (Pause in proceeding.)

16  BY THE COURT:

17        Q.    What is your plea, then, to the charge in

18  Count 1 of the indictment, violation of Section 371 of Title

19  18, U.S. Code, conspiracy to commit mail fraud and wire

20  fraud as I read it to you, guilty or not guilty?

21        A.    Guilty.

22        Q.    And what is your plea to the charge in Count 7

23  of the indictment, violation of Section 1956, subdivision h,

24  of Title 18, U.S. Code, conspiracy to launder money as I

25  read it to you, guilty or not guilty?

1        A.      Guilty.

2        Q.      And are you pleading guilty to these two
3   charges freely and voluntarily with the advice of your
4   lawyer and, in fact, because you are guilty of these two
5   offenses?

6        A.      Yes, sir.

7                THE COURT:  May I have a brief factual basis
8   for the pleas, Ms. Skipper?

9                MS. SKIPPER:  Yes, your Honor.

10               At all times relevant to conduct alleged in
11  the indictment, Defendant Roland Adams lived and worked in
12  Sacramento.  He was part of an advance fee fraud scheme that
13  was perpetrated, in part, through the mailing of
14  solicitation letters from this district, purportedly from
15  officials of African governments.  In exchange for the
16  victims' agreement to cooperate in the scheme, they were
17  promised a substantial portion of the diverted funds.

18               On or about May 7th, 2001, Mr. Adams caused
19  such a solicitation letter, purportedly from a senior
20  employee of a South African Ministry of Energy and Mineral
21  Resources to be mailed from Sacramento to victims in the
22  state of Washington.

23               Mr. Adams also registered the Internet domain
24  names Afribankcorp.com, Bancofafrica.com, and
25  Bancofeasterncarribean.com.

1        On or about April 5, 2001, Mr. Adams, using
2   the alias Peter Brown, visited a web site design company in
3   Sacramento to obtain a designer's professional services to
4   create the web sites for the fictitious offshore banks.
5   These web sites were maintained by Mr. Adams.

6        On or about May 22nd, 2001, he accessed the
7   Afribankcorp.com web site in an administrator capacity, via
8   an Internet account opened in the name of Sam Kigali.

9        The money that was received from victims were
10  for fees which, in general, were for one percent of the
11  total fund transfer amount that was promised.  As part of
12  the scheme, victims received instructions for payment of the
13  fees, as well as updates on the progress of the release by
14  email.  Victims also contacted Afribank using a Los Angeles
15  area telephone number, calls which were automatically
16  forwarded to Mr. Adams' mobile telephone.

17        A portion of the funds and monetary
18  instruments sent to South Africa, Canada, or bank accounts
19  around the world for payment using the proceeds of the fraud
20  scheme were later forwarded by the Defendant's
21  co-conspirators abroad to Sacramento by Western Union wire
22  transfer or other means for Adams' personal use.

23        The transfer transactions involved multiple
24  wire transfers and private shipments conducted in a manner
25  so as to conceal the nature of the funds as fraud proceeds

1   and to conceal the origin.

2          Mr. Adams knew the funds and instruments were
3   proceeds from the fraud scheme and accepted them as payment
4   for his participation in the fraud scheme.  He also knew the
5   funds were routed in a manner meant to conceal the nature
6   and origin of the funds.

7          He personally, and through his business, Adams
8   Business Services, received the funds and monetary
9   instruments from his co-conspirators abroad and deposited a
10  large portion of them in a U.S. Bank account numbered
11  153490192959 in the name of Roland Adams and Adams Business
12  Services in Sacramento.

13         The web sites were maintained by him using
14  Sony Vaio laptop, model PCG-9B3L, with hard drive, DVD-Rom,
15  CD-RW, 3.5 inch floppy drive and all its components, serial
16  number 283471303217395.

17         If this case were to proceed to trial, in
18  addition to other evidence, the Government could call
19  victims to testify at trial, presenting evidence of actual
20  losses in excess of two point one million dollars.

21         THE COURT:  Mr. Adams, did you hear and
22  understand the statement of the prosecutor for pleas of
23  guilty?

24         THE WITNESS:  Yes, sir.

25         THE COURT:  Is that what you did?

23

```
 1                    THE WITNESS:  Yes, sir.

 2                    THE COURT:  The Defendant's pleas of guilty

 3   are accepted and judgment of guilty hereby entered.  The

 4   Court finds that there is a factual basis for the please of

 5   guilty; that the Defendant understands the nature of the

 6   charges and consequences of the pleas, he understands his

 7   constitutional rights, and that the Defendant's pleas of

 8   guilty were freely and voluntarily made.

 9                    This matter will now be referred to the U.S.

10   Probation Office for a report and recommendation.

11   Sentencing will be postponed about ten weeks for that

12   purpose.

13                    THE CLERK:  October 27, your Honor.

14                    THE COURT:  I'll schedule sentencing for

15   October 27, '03, at 8:30 a.m., if that date and time is

16   agreeable with Counsel?

17                    MR. BOCHMAN:  It's fine, your Honor.

18                    MS. SKIPPER:  It's fine, your Honor.

19                    (Discussion off the record.)

20                    THE COURT:  When do you want to schedule the

21   court trial?

22                    MR. BOCHMAN:  We'd like to have a status -- we

23   can set the court trial today, if that's what the Government

24   wants, but I think it will be resolved.  I hope to, in any

25   event.
```

1        If we can have status on the 8th, that would

2   be great, if she wants to.

3        THE COURT: 8th of what?

4        MR. BOCHMAN: September, your Honor, and I'm

5   agreeable to setting a court trial date today too. That's

6   fine.

7        THE COURT: We'll set a status conference for

8   September 8th, '03.

9        Is that date available, Colleen?

10       THE CLERK: Yes. That would be at 8:30.

11       THE COURT: 8:30 a.m. And we'll set the court

12  trial now.

13       What date did you want, Ms. Skipper?

14       MS. SKIPPER: September 22nd, your Honor.

15       THE COURT: Is that date available?

16       THE CLERK: Yes, sir.

17       THE COURT: We'll schedule a court trial for

18  September 22, '03, commencing at 9:00 a.m., and I'll remind

19  Counsel that the waiver of jury trial has to be presented in

20  writing signed by the Defendant.

21       (Discussion off the record.)

22       THE COURT: As far as the court trial on Count

23  9 and Count 10, the Court will continue to find excludable

24  time up to the date of trial pursuant to local codes T4 and

25  T2.

25

```
 1                    Is that agreeable, Mr. Bochman?
 2               MR. BOCHMAN:  Yes, your Honor.
 3               THE COURT:  Ms. Skipper?
 4               MS. SKIPPER:  Yes, your Honor.
 5               THE COURT:  All right.  That's the order.
 6               Anything further for now?
 7               MR. BOCHMAN:  Yes, your Honor.
 8               THE COURT:  Counsel?
 9               MR. BOCHMAN:  We have the companion case
10  02-560, I think the number is.
11               THE COURT:  Yes.  That's been trailing this
12  lead case.
13               MR. BOCHMAN:  I would ask that to continue to
14  trail, your Honor.
15               THE COURT:  Okay.  We'll continue that, to put
16  it on calendar in the event you are able to settle the court
17  trial?
18               MS. SKIPPER:  Yes, your Honor.
19               MR. BOCHMAN:  Yes, your Honor.
20               THE COURT:  Indictment number 02-560 is
21  ordered to trail to September 8, '03, and the Court will
22  find excludable time, T2 and T4 on that trailing indictment
23  also.
24               Is that agreeable, Ms. Skipper?
25               MS. SKIPPER:  Yes, your Honor.
```

1          THE COURT:  Mr. Bochman?

2          MR. BOCHMAN:  Yes, your Honor.

3          THE COURT:  Thank you, Counsel.

4          MS. SKIPPER:  Thank you, your Honor.

5          MR. BOCHMAN:  Thank you, your Honor.

6          (Thereupon the proceeding was

7          adjourned at 9:12 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2    STATE OF CALIFORNIA    )
                            )  ss.
3    COUNTY OF SACRAMENTO   )

4

5              I, KELI RUTHERDALE, a Certified Shorthand

6    Reporter licensed by the State of California, and empowered

7    to administer oaths and affirmations pursuant to Section

8    2093(b) of the Code of Civil Procedure, do hereby certify:

9              That the said proceedings were recorded

10   stenographically by me and were thereafter transcribed by me

11   via computer-assisted transcription;

12             That the foregoing transcript is a true record

13   of the proceedings which then and there took place;

14             That I am a disinterested person to said

15   action.

16             IN WITNESS WHEREOF, I have subscribed my name

17   on December 5, 2003.

18

19

20

                              KELI RUTHERDALE
21                            Certified Shorthand Reporter #10084

22

23

24

25

28

DIAMOND COURT REPORTERS  (916) 498-9288

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---


| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. CR-S-02-257 |
| ROLAND ADAMS, | ) |
| Defendant. | ) |


----oOo---

HELD BEFORE THE HONORABLE EDWARD J. GARCIA

FRIDAY, APRIL 9, 2004

---oOo---

REPORTED BY:   PATRICIA A. HERNANDEZ, CSR #6875

EXHIBIT C



# A P P E A R A N C E S

FOR THE PLAINTIFF:              CAMIL SKIPPER
                               Deputy Federal Prosecutor
                               Department of Justice
                               501 I Street
                               Sacramento, California  95814


FOR THE DEFENDANT:             RICHARD DANGLER
                               Attorney at Law
                               P.O. Box 189670
                               Sacramento, CA   95818-9670
                               (916) 737-3166

1                          ---oOo---

2                          PROCEEDINGS

3                          ---oOo---

4          THE CLERK:  Criminal S-02-257 United States versus

5    Roland Adams.

6          MS. SKIPPER:  Good morning, your Honor.  Camil

7    Skipper for the United States.

8          THE COURT:  Miss Skipper.

9          MR. DANGLER:  Good morning, your Honor.  Richard

10   Dangler for Roland Adams.

11         THE COURT:  Mr. Dangler.  The record will show that

12   the Defendant is also present.

13         This matter is on calendar under submission for

14   decision after hearing on Defendant's motion to withdraw

15   pleas of guilty.  The motion is brought pursuant to

16   Rule 11 subdivision (d)(2)(B) as in "Baker".

17         Pursuant to a written plea agreement on August 18,

18   last year, the Court accepted the Defendant's pleas of

19   guilty to Counts 1 and Count 7 of the indictment and

20   entered judgment thereon, but has not yet imposed

21   sentence.  Thus, the burden is on Defendant to show a just

22   and fair reason why the Court should set aside the

23   judgment of guilt and allow withdrawal of the guilty

24   pleas.

25         An evidentiary hearing on the motion was held on

26   March 19 of this year at which Defendant's former

27   attorney, Matthew Bachman, was called and he testified as

28   a Defendant's witness.  Exhibits were introduced, and the

1   Court stated it would take judicial notice of its own
2   records of the matter which included, among other things,
3   the written and signed plea agreement including the
4   attached factual basis for plea, the reporter's transcript
5   of the Rule 11 change of plea proceedings, and a letter
6   that the Defendant wrote the Court on September 21, last
7   year, about a month after pleading guilty, in which
8   Defendant accepted full responsibility for his role in the
9   fraudulent scheme to which he had pled guilty.

10  In his written briefs on the motion, which included
11  two declarations of the Defendant accusing his attorney,
12  Mr. Bachman of ineffective assistance of counsel,
13  Defendant raises several issues in support of his motion
14  to withdraw pleas.  However, at the evidentiary hearing
15  when the U.S. indicated it would call Defendant's prior
16  attorney, prior attorneys as witnesses and would also call
17  the Defendant as a witness to cross-examine him on his
18  declaration, Defendant withdrew his declarations.  Also,
19  Defendant chose not to testify at the hearing, so that the
20  sole claim before the Court in support of the motion to
21  withdraw pleas is Defendant's claim that Mr. Bachman
22  provided ineffective assistance of counsel in failing to
23  advise the Defendant that the factual basis for plea could
24  be used as evidence at the trial of the related
25  indictment.

26  This related indictment, docket number CR-02-560,
27  charges Defendant with a violation of Section 1425(a)
28  of Title 18, unlawful procurement of citizenship or

2

1   naturalization, and a violation of Section 1001 of

2   Title 18, false statements.  The trial of Defendant on

3   this indictment is scheduled to commence next Monday.

4       The issue of whether the Court will allow use of

5   the factual basis for plea, which in essence constitutes  EJG

6   Defendant's commission admitting *, admissions to committing* the crimes charged to which

7   he pled guilty, is raised in Defendant's in limine motion

8   on which the Court has not yet ruled.

9       At the evidentiary hearing Mr. Bachman testified  EJG

10  that he did not advise Defendant that a defacto *factual* basis for

11  the plea could be used as evidence against the Defendant

12  at the trial of the related indictment, criminal number

13  02-560, and the Government concedes this factual issue.

14  Defendant claims this failure to advise constitutes

15  ineffective assistance of counsel, rendering Defendant's

16  guilty pleas not knowingly made, and thus involuntary

17  because Defendant was not made aware of the full

18  consequences of the pleas of guilty.

19      Defendant also argues that he would have elected to

20  go to trial had he known the factual basis in the instant

21  case could be used against him in the trial of the related

22  case; however, there is no evidence before the Court that

23  had the Defendant known the factual basis could be used

24  against him, he would not have pled guilty.  Defendant

25  himself makes no such claim.

26      On the motion to withdraw pleas Defendant cites

27  the U.S. Supreme Court case of Hill V. Lockhart, and

28  the Government cites its Ninth Circuit progeny, U.S. v.

1   Baramdyke.   These cases apply to Supreme Court teachings
2   in Strickland v. Washington in determining claims of
3   ineffective assistance of counsel in motions to withdraw
4   the plea.   These related cases -- excuse me.   These cited
5   cases set forth the legal principle to be applied on the
6   motion before the Court.

7          A claim of ineffective assistance used to attack
8   the validity of a guilty plea may be sustained where the
9   petitioner established that the ineffective performance
10  affected the outcome of the plea process such that absent
11  the erroneous advice, he would have insisted on going to
12  trial; and under Strickland v. Washington, to demonstrate
13  ineffective assistance of counsel, the Defendant must
14  satisfy both prongs of the Strickland case:   One that
15  Mr. Bachman's performance fell below the objective
16  standard of reasonableness in not advising Defendant the
17  factual basis could be used in the related case, that is,
18  was his failure to advise outside the range of
19  professional competent assistance; and two, the second
20  prong, that there is a reasonable probability that but for
21  counsel's unprofessional error, the result of the
22  proceeding would have been different.   A reasonable
23  probability is a probability sufficient to undermine
24  confidence in the outcome.

25         The Government argues that Defendant fails to
26  satisfy the first prong of the Strickland case because use
27  of the factual basis for the plea was a collateral
28  consequence of the guilty pleas, and there is no legal

4

1   duty or requirement to advise the Defendant of such
2   collateral consequences of the guilty pleas.  For this
3   proposition, the Government cites three Ninth Circuit
4   cases, U.S. v. Littlejohn, Torrey v. Estelle and
5   U.S. v. King.  These cases stand for the principle that
6   there is a duty for an attorney to advise Defendant of the
7   direct consequences of a plea of guilty but not of
8   collateral consequences.  These cases define and
9   distinguish direct and collateral consequences of guilty
10   pleas and give examples.  The bottom line quote from the
11   Torrey decision is that failure to advise a client of a
12   collateral penalty cannot be held to be below an objective
13   standard of reasonableness.

14   Based on the teachings of the cases cited, I find
15   that the use of the factual basis in the subsequent trial
16   is a collateral consequence, and Mr. Bachman's failure to
17   advise Defendant of it did not constitute ineffective
18   assistance of counsel.

19   In this regard, I find the Government's argument
20   persuasive.  The U.S. obtained the related indictment for
21   naturalization fraud before Defendant pled guilty in the
22   instant case and was prepared to proceed in the related
23   case with admissions of the Defendant, a conviction in the
24   instant case after trial and with presentation of the
25   proofs for the underlying advance fee fraud case.
26   Whatever the Government's proof, the ultimate decision
27   will be up to the jury, and thus the use of the factual
28   basis at the pending trial of the related case is no more

5

1    than a collateral consequence since it depends on action
2    by jury and not this sentencing Court.  In this
3    connection, see Littlejohn at page 965.

4         Since the use of the factual basis which
5    constitutes relevant admissions of an undisclosed crime in
6    the related case has no bearing or immediate effect on
7    punishment in the instant case, it's use is not a direct
8    consequence of Defendant's guilty pleas.  In this
9    connection see Torrey at page 235 which teaches that the
10   distinction between direct and collateral consequences of
11   a plea of guilty turns on whether the result represents a
12   definite, immediate and largely automatic effect on the
13   range of Defendant's punishment.

14        But even if the failure to advise could be
15   determined to be a direct consequence of Defendant's
16   guilty pleas with a duty on Mr. Bachman to have advised
17   the Defendant the factual basis could be used at the trial
18   of the related case, Defendant fails to satisfy
19   Strickland's second prong, prejudice.  There is no
20   evidence before the Court that had the Defendant known the
21   factual basis could be used against him in the trial of
22   the related case, he would not have pled guilty.
23   Defendant himself makes no such claim, having withdrawn his
24   declarations during the hearing.

25        In this connection see the Supreme Court Hill v.
26   Lockhart case previously referred to in which the Court
27   affirmed the Trial Court's denial of habeas relief because
28   the Petitioner failed to allege in Hill's petition that

1    had counsel correctly informed him about his parole
2    eligibility date, he would have pleaded not guilty and
3    insisted on going to trial.  The Lockhart case explains
4    that because of the fundamental interest in the finality
5    of guilty pleas, prejudice must be shown; that is, that
6    the attorney's conduct, even if unreasonable, was
7    prejudicial.  This Defendant has failed to do.  I find
8    Defendant has also, therefore, not satisfied Strickland's
9    second prong.

10        Because of the seriousness of the allegations by
11   Defendant on this motion, I have carefully reviewed the
12   reporter's transcript of the Rule 11 change of plea
13   proceedings and my notes of Mr. Bachman's testimony at the
14   evidentiary hearing.  I note that the written plea
15   agreement contains a signed statement by Defendant, by
16   Defendant's then attorney, Mr. Bachman, that he fully
17   discussed the plea agreement with the Defendant, and that
18   he concurred with Defendant's decision to plead guilty as
19   set forth in the agreement.

20        This statement by Mr. Bachman is actually  oath  E.R
21   corroborated by his uncontradicted testimony under ~~both~~ at
22   the evidentiary hearing, and the plea agreement also
23   contains a signed statement by the Defendant that he
24   carefully reviewed every part of the plea agreement with
25   his attorney, and that the Defendant understood it, and
26   that he voluntarily agreed to it.  Defendant also states
27   in the signed statement, as he did under oath at the
28   Rule 11 change of plea proceedings, that no other promises

1    or inducements have been made to him other than those
2    contained in the plea agreement, and that no one
3    threatened or forced him to enter into the plea agreement.
4         Finally, Defendant states, as he did in open court
5    under oath when he pled guilty, that he was satisfied with
6    the representation of his attorney in this case.  All of
7    this is also consistent and corroborative of Mr. Bachman's
8    testimony at the evidentiary hearing.
9         There is no evidence Mr. Bachman rendered
10   ineffective assistance of counsel in handling the case and
11   in recommending Defendant's acceptance of the plea
12   agreement, and I now find that Defendant's pleas of guilty
13   were entered into knowingly and voluntarily, with full
14   knowledge of the consequences of his guilty pleas.  Thus,
15   I find Defendant has failed to show a fair and just reason
16   why the Court should set aside his judgment of guilty on
17   Counts 1 and Count 7 of the indictment based on
18   Defendant's guilty pleas thereto.
19        Defendant's motion to withdraw guilty pleas is now
20   denied.
21        The U.S. attorney is directed to prepare and submit
22   a summary order of decision, and it might attach thereto a
23   reporter's transcript of the Court's analysis of decision.
24        Has a date been set for sentencing in this case,
25   Miss Skipper?
26        MS. SKIPPER:  No, your Honor.  I hope that we can
27   do that today.
28        THE COURT:  Is the probation officer in court.

8

1    PROBATION OFFICER:  Yes, your Honor.

2    THE COURT:  I don't know how familiar you are with

3    the case so far.

4    PROBATION OFFICER:  I am unfamiliar.

5    THE COURT:  How much time do you think you need?

6    PROBATION OFFICER:  I would probably suggest the

7    full --

8    THE COURT:  The ten weeks?

9    PROBATION OFFICER:  I think so.

10   MS. SKIPPER:  Yeah, I had spoken with Miss Wilkins,

11   your Honor, who is a probation officer, and she does

12   requested the full ten weeks.

13   THE CLERK:  That would be June 18, your Honor.

14   THE COURT:  I'll schedule sentencing, then, for

15   June 18, '04, 10:00 a.m. if that date and time is

16   agreeable with counsel.

17   MS. SKIPPER:  It is, your Honor.

18   MR. DANGLER:  Yes, your Honor.  Thank you.

19   THE COURT:  Before I conclude, I want to note that

20   Defendant has sent me another letter, an ex parte

21   communication in an apparent attempt to influence me on

22   the motion to withdraw pleas.  I previously warned

23   Defendant not to do this.  I have ordered the letter

24   stricken from the clerk's file.

25   Since Defendant is represented by counsel, he is

26   not entitled to represent himself.  See U.S. v. Olano,

27   62 Fed. 3d 1180 at page 1193, a Ninth Circuit 1994 case.

28   So long as Defendant is represented by counsel, any

1  documents that the Defendant files on his own behalf will

2  not be considered.

3           Anything further for now, Miss Skipper?

4           MS. SKIPPER:  No, your Honor.  Thank you.

5           THE COURT:  Mr. Dangler?

6           MR. DANGLER:  No, your Honor.  Thank you.

7           THE COURT:  Can I have a stipulation from counsel

8  that the exhibits submitted at trial will be returned to

9  the proponent for preservation for further proceeding?

10           MS. SKIPPER:  Yes, your Honor.

11           THE COURT:  All right.  Anything further,

12  Mr. Dangler?

13           MR. DANGLER:  Nothing.

14           THE COURT:  All right.  Thank you, counsel.

15           MS. SKIPPER:  Thank you.

16           MR. DANGLER:  Thank you.

17                         ---oOo---

18      [Proceedings in the above-entitled matter concluded.]

19                         ---oOo---

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SHORTHAND REPORTER

I, Patricia A. Hernandez, a Certified Shorthand Reporter of the State of California, do hereby certify that I am a disinterested person herein; that I reported the foregoing hearing in shorthand writing; that I thereafter caused my shorthand writing to be transcribed into typewriting.

I further certify that I am not of counsel or attorney for any of the parties to said hearing, or in any way interested in the outcome of said hearing.

IN WITNESS WHEREOF, I have hereunto set my hand this 22nd day of April, 2004.

Patricia A. Hernandez
Certified Shorthand Reporter
License Number 6875

1      ## CERTIFICATE OF SERVICE BY MAIL

2          The undersigned hereby certifies that she is an employee in
3   the Office of the United States Attorney for the Eastern District
4   of California and is a person of such age and discretion to be
5   competent to serve papers; that on April 26, 2004, she served a
6   copy of **ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEAS**
7   by placing said copy in a postpaid envelope addressed to the
8   person(s) hereinafter named, at the place(s) and address(es) stated
9   below, which is/are the last known address(es), and by depositing
10  said envelope and its contents in the United States Mail at
11  Sacramento, California.

12  Addressee(s):

13

14  Richard Dangler, Esq.
    3102 "O" St., Ste 21
15  Sacramento, CA 95816

16

17  Jennifer R. Vassell
    Legal Assistant

18

19

20

21

22

23

24

25

26

27

28

ndd

United States District Court
for the
Eastern District of California
April 28, 2004

* * CERTIFICATE OF SERVICE * *

2:02-cr-00257

USA

v.

Adams

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  April 28, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

     Camil Antoinette Skipper     CL/EJG
     United States Attorney
     501 I Street
     Suite 10-100
     Sacramento, CA  95814

     Richard Hale Dangler Jr
     Law Offices of Richard H Dangler
     3102 O Street
     Sacramento, CA  95816

     Roman Rector
     NOT EDCA ADMITTED
     Law Offices of Richard H Dangler
     3102 O Street
     Sacramento, CA  95816

SERVICE BY INTER OFFICE:

    US MARSHAL     PROBATION     PRETRIAL SERVICES

Jack L. Wagner, Clerk

by: Deputy Clerk